IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY NOBLES | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:12CV107-HSO-RHW |
| | § | |
| CARDNO, INC. f/k/a ATC GROUP | § | DEFENDANT |
| SERVICES, INC. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER COMES BEFORE THE COURT upon the Motion [43] of Defendant Cardno, Inc. for Summary Judgment, filed January 7, 2013, pursuant to FED. R. CIV. P. 56. Larry Nobles has filed a Response [45], and Cardno, Inc., has filed a Reply [47]. After consideration of the parties' submissions, the record in this case, and relevant legal authorities, and for the reasons stated below, the Court finds that the Motion for Summary Judgment should be granted.

## I. FACTS AND PROCEDURAL HISTORY

Defendant Cardno, Inc., formerly known as ATC Group Services, Inc. ["Defendant"], is an engineering consulting company with multiple branches in multiple states. It provides services in the fields of geotechnical engineering, engineering consulting, construction materials testing/inspection, and environmental management. Larry Nobles ["Plaintiff"] is a professional engineer who resides in Mobile, Alabama. Plaintiff received his engineering degree in 1972 from the University of South Alabama, in Mobile, Alabama. He is registered and licensed as a Professional Engineer in Alabama, Louisiana, and Mississippi.

In March 2010, Defendant created the position of Branch Operations Manager ["BOM"] for its Biloxi, Mississippi, office and advertised the position with Career Builder. At the time Mr. Scott Vinsant was employed as the Branch Manager for Defendant's Birmingham, Alabama, and Biloxi, Mississippi, offices. Mr. Vinsant reported to Mr. Wendell Lattz, Senior Vice President of ATC.

Mr. Vinsant interviewed Plaintiff for the Biloxi Branch Manager position during March 2010, and on March 25, 2010, he emailed an offer letter to Plaintiff. The offer letter stated in part as follows:

> Please note that we will work with you as stated in the letter on working remotely when appropriate but in the beginning your presence each day will be required as we discussed. Also, Wendell and I see a future using you between our Biloxi and Daphne locations but for now our main concentration should be getting Biloxi organized and headed in the right direction.

Email, att. as Ex. "43-1", at p. 107.

Plaintiff accepted Defendant's offer on March 29, 2010, and commenced his employment with Defendant on April 12, 2010. Compl. [1-2, p. 4] After twenty nine days, on May 11, 2010, Defendant terminated Plaintiff's employment. *Id.* at p. 6. According to Plaintiff, "shortly before he was terminated, Defendant placed an ad for a "high energy" engineer or engineer in training, with a bachelor's degree." *Id*. Plaintiff was sixty (60) years old at the time he was hired and terminated.

According to Mr. Lattz, "[d]uring the last week Mr. Nobles worked for ATC before his discharge, I received numerous unfavorable reports or complaints about him . . . and according to Mr. Vinsant he was not demonstrating sufficient energy

in performing his job, took too long to accomplish anything, and was making negative comments to staff about having to work too hard." Declaration of Wendell Lattz [43-4] at ¶ ¶8, 10, att. as Ex. "4" to Mot. for Summ. J.

Following his termination meeting with Plaintiff, Mr. Vinsant completed the Employee Termination Form for placement in Plaintiff's personnel file. Declaration of Scott Vinsant [43-2] at ¶14, att. as Ex. "2" to Mot. for Summ. J. Mr. Vinsant marked #10 "unable to meet job requirements" in the form's "reasons for termination" section and wrote the following comments:

> Larry was hired to be a BOM in Biloxi. This branch needs immediate action to turn it around financially. After various meetings & discussions, it became apparent that he could not provide the financial management skills necessary in a timely fashion and that he was unwilling to push employees to do their jobs right.

ATC Employee Termination Form [43-9], at p. 2, att. as Ex. "9" to Mot. for Summ. J.

In considering Mr. Vinsant's complaints about Plaintiff, Mr. Lattz obtained and relied on additional office observations from ATC employees Jeremy Graham, Dana Glasscox, and Leland Creel.

> Jeremy Graham told me during that final week prior to Mr. Nobles' termination that he was concerned about the direction in Biloxi and his view that Mr. Nobles was not stepping up to make sure the field operations employees were taking the right actions.
>
> On Monday May 10, I spoke to Dana Glasscox, who is a long-time ATC employee and Branch Administrator working under Mr. Vinsant's supervision. . . . She told me that she wished she could have a more positive response but that she had observed enough regarding Mr. Nobles to conclude he would not or could not do what was necessary to turn around the Biloxi office. In her view, Mr. Nobles did not have the desire to perform at the level required and could not multi-task or lead the office.

-3-

> That same day, I also spoke with Leland Creel about Mr. Nobles. Mr. Creel praised Mr. Nobles' technical and engineering skills, but advised he was not showing the ability to address the multiple management issues confronting the Biloxi office. Mr. Creel also told me that Mr. Nobles was a good person but did not fit what we wanted.

Declaration of Wendell Lattz [43-4] at ¶¶ 9, 12-13, att. as Ex. "4" to Mot. for Summ. J.

Following his termination, Plaintiff filed a formal charge of discrimination with the Equal Employment Opportunity Commission ["EEOC"] on July 31, 2010, alleging discrimination based upon his age. EEOC Charge [43-1], att. as Ex. "1" to Mot. for Summ. J. On December 30, 2011, the EEOC issued its Dismissal and Notice of Right to Sue. EEOC Right to Sue Letter [1-2], at pp. 12-13.

Plaintiff filed his Complaint in the Hinds County Circuit Court, First Judicial District on March 28, 2012, seeking damages for violations of the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. § 621, *et seq*. Defendant removed the case to this Court on April 10, 2012. Defendant now moves for summary judgment on the Complaint based upon Plaintiff's inability to provide sufficient evidence to establish a *prima facie* case of age discrimination, or any evidence from which a jury could reasonably conclude that Defendant's grounds for terminating Plaintiff were mere pretext. Plaintiff asserts that genuine issues of material fact exist for trial.

## II. DISCUSSION

A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is

appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of America,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient

for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

B.    <u>Plaintiff's *Prima Facie* ADEA Claim</u>

Defendant moves for judgment as a matter of law on Plaintiff's ADEA claim on the following grounds: 1) Plaintiff cannot establish a *prima facie* case of age discrimination as a matter of law; and 2) even if Plaintiff can establish the requisite elements, Defendant has articulated a legitimate, nondiscriminatory reason for its termination decision that Plaintiff cannot demonstrate was pretextual. Def.'s Mot. for Summ. J. [43], at p. 1.

The ADEA provides in pertinent part that:

> [i]t shall be unlawful for an employer to (1) fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age; (2) limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a)(1) and (2).

ADEA claims are assessed using the same analytical framework as claims brought pursuant to Title VII and 42 U.S.C. § 1981. *Roberson v. Alltel Information Services*, 373 F.3d 647, 651 (5th Cir. 2004). An assertion of discrimination on the

basis of age can be proved through either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Where the record is devoid of direct evidence of discrimination, the plaintiff must rely on circumstantial evidence to carry his or her burden. *See id.* In establishing causation through circumstantial evidence, the tripartite burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *See Portis v. First Nat'l Bank,* 34 F.3d 325, 328 (5th Cir. 1994)("Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas,* [which] establishes a prima facie case by inference.").

Under the *McDonnell Douglas* framework, a plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. To do so, a plaintiff must demonstrate that he or she (1) suffered an adverse employment action; (2) was qualified for the position; (3) was within the protected class at the time of the decision; and (4) that the person selected was not within the protected class, or, that others similarly situated but not within the protected class were more favorably treated, or, that the plaintiff was otherwise discharged because of age. *Rios v. Rossotti,* 252 F.3d 375, 378 (5th Cir. 2001); *Eaves v. K-Mart Corp.*, 193 F. Supp. 2d 887, 893 (S.D. Miss. 2001).

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating–not proving–a legitimate, nondiscriminatory reason for the adverse employment action. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,

142 (2000). An employer meets its burden of production by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir. 1991).

Once an employer articulates a legitimate, nondiscriminatory reason for its action, the burden shifts to the plaintiff to produce sufficient admissible evidence demonstrating "(1) (the) employer's reason is pretext, or (2) (the) employer's reason, while true, is only one reason for its conduct, and another motivating factor is [the] employee's protected characteristic." *Burrell v. Dr. Pepper/ Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *Purcell v. Sequin State Bank and Trust Co.,* 999 F.2d 950, 957 (5th Cir. 1993). In situations where an employer's reasons are "unpersuasive, or even obviously contrived," the plaintiff must nevertheless prove that the proffered reasons were but a pretext for discrimination. *St. Mary's Honor Center,* 509 U.S. at 523. In evaluating whether the case is one of intentional discrimination, "a court should consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" *Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 902 (5th Cir. 2000)(quoting *Reeves*, 530 U.S. at 148-49). Although intermediate evidentiary burdens shift back and forth under the framework, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all

times with the plaintiff." *Reeves*, 530 U.S. at 143.

Plaintiff's support for his ADEA claim stems solely from his subjective belief that he was terminated because of his age, and because Mr. Tad Nelson, who was hired as the replacement engineer, was younger than Plaintiff. Plaintiff's deposition testimony reveals that Plaintiff had not seen Mr. Nelson's resume, was not aware of the extent of Mr. Nelson's qualifications, and did not know that Mr. Nelson had served as a manager for one of Defendant's competitors for almost twenty years. Dep. of Plaintiff [43-1] at pp. 34-37, att. as Ex. "1" to Def.'s Mot. for Summ. J.

In his deposition Plaintiff expounded on his employment with Defendant:

Q: So you accused your supervisor and his financial assistant of illegal activity on the very first day of employment, is that what you are saying?

A: Yes.

\* \* \*

A: . . . that May 7th meeting, they had already decided to terminate me . . . they posted that ad on May 6th . . . that was just a setup to make me fail . . ..

Q: OK. What facts support that belief?

A: . . . a May 13th email exchange between Scott and Wendell Lattz. Lattz said last Thursday, which would have been May 6th, I talked to Herb Newman and told him - - discussed Larry's performance issues with him and told him that Larry was going to be terminated.

Q: Is there anything other than that particular exchange with Herb Newman that leads to your belief that you were set up to fail, is your words? Is there anything else?

> A: Well, considering that they had already decided to fire me before that meeting ever happened, I mean, what was the point of even -- me even being in the meeting?

Dep. of Plaintiff [43-1] at pp. 39, 93-94, att. as Ex. "1" to Def.'s Mot. for Summ. J.

Plaintiff testified that while it was Mr. Lattz's decision to fire him, it was Mr. Vinsant who informed him that "he was being let go because they didn't think I would work out." Depo. of Larry Nobles [45-3] at pp. 113-14, att. as Ex. "3" to Pl.'s Resp. to Mot. for Summ. J. Plaintiff alleges that he was terminated based upon his age and that Defendant advertised for and hired a much younger individual as his replacement. Plaintiff testified in relevant part follows:

> Q: When you emailed Mr. Toups . . . is there any particular reason why you didn't tell him that you thought you had been fired because of your age?
>
> A: At that time I didn't know about the job ad. . . . When I saw that job ad . . . I said this makes it crystal clear that it's age.

*Id.* at pp. 85.

The evidence tendered in the present case establishes that: 1) Plaintiff was terminated; 2) he was over the age of forty (40) at the time the alleged discrimination occurred and was therefore a member of a protected group for purposes of the ADEA; and 3) George "Tad" Nelson, who was forty nine (49) and a younger individual, was hired a month following Plaintiff's termination.

For purposes of *McDonnell Douglas*, Plaintiff's May 10, 2010, termination qualifies as an adverse employment action. According to the Fifth Circuit, such adverse actions include, but are not limited to, "hiring, granting leave, *discharging*,

promoting, and compensating." *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir. 2004) (emphasis added). In ADEA cases, the fourth element is likewise satisfied where others similarly situated but not within the protected class are treated more favorably. *See Eaves,* 193 F. Supp. 2d at 893. In the present case, the evidence is uncontroverted that Plaintiff's replacement was within the protected class, as he was 49 years old at the time he was hired to replace Plaintiff.

Plaintiff has not proffered direct evidence that he was otherwise discharged because of his age. However, the evidence before the Court demonstrates that Plaintiff was educated and trained in the engineering field, was terminated at the age of sixty (60) and was replaced by someone eleven (11) years his junior. The Court finds that the evidence relating to Plaintiff's qualifications for the position of Branch Operations Manager is marginal; nonetheless, this Court must construe the evidence in favor of the nonmovant. In doing so, the Court is persuaded that Plaintiff has established the requisite elements of a *prima facie* case of age discrimination.

C. Defendant's Legitimate, Nondiscriminatory Reasons

Once a *prima facie* case of age discrimination is established, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. Defendant has submitted admissible evidence to support its position that it properly based its decision to terminate Plaintiff for his failure to perform the requisite tasks of his position.

In support of its position, Defendant has tendered Plaintiff's "Employee Termination Form" which contains a check in the section entitled "Unable to Meet Job

Requirements" as the basis for Plaintiff's termination. Employee Termination Form [43-9], att. as Ex. "9" to Mot. for Summ. J. This form also included the following comments from Mr. Scott Vinsant: "[a]fter various meetings and discussions, it became apparent that he [Plaintiff] could not provide the financial management skills necessary and in a timely fashion and that he was unwilling to push employees to do their jobs right." *Id.* Mr. Vinsant testified that Plaintiff told Jeremy Graham that "he could not understand technicians expecting or wanting to work lots of hours . . . and told Mr. Vinsant specifically that "he was not that committed to the job." Dep. of Scott Vinsant [43-3] at pp. 11-12, att. as Ex. 3 to Mot. for Summ. J. When Mr. Vinsant was asked whether there "[w]as there any other reason for Mr. Nobles' discharge besides his performance problems," he responded "[n]o." *Id.* at p. 29.

In support of his Response, Plaintiff attaches his own Affidavit [45-2] which disputes each of Mr. Vinsant's grounds and rationale for the termination. Plaintiff states that "Mr. Vinsant also claims that it took me a full day to get ready for the financial matters conference call. This is not true. It took less than two hours for me to prepare." Aff. of Larry Nobles [45-2], att. As Ex. "B" to Resp. to Mot. for Summ. J., pp. 2-3.

"Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus." *Jones v. Overnite Transp. Co.,* 212 F. App'x 268, 275 (5th Cir. 2006)(citing *Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 (5th Cir. 1997)). Moreover, "management does not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass*

*Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)(citing *Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir.1991)("even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason' for termination.")).

Because Defendant has offered legitimate, nondiscriminatory reasons for its treatment of Plaintiff, the Court finds that Defendant has successfully rebutted any initial inference of discrimination. In order to survive summary judgment, Plaintiff must show that the proffered grounds were but a pretext for discrimination.

D.   Plaintiff's Burden of Demonstrating Pretext

To succeed at the pretext stage of the *McDonnell Douglas* analysis, Plaintiff must do more than merely discredit Defendant's reasoning; he must *prove* that the articulated reason is a pretext. *St. Mary's Honor Center*, 509 U.S. at 515-516; *see also Wyatt v. Runyon*, 37 F.3d 632, 633 (5th Cir. 1994); *Ryther v. KARE 11*, 108 F.3d 832, 837 (8th Cir. 1997). Mere subjective assertions, without more, are insufficient to obtain relief under the discrimination laws. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995).

In support of his position, Plaintiff has submitted his Affidavit which states in part as follows:

> Mr. Vinsant has claimed that I would begin review on reports at the beginning of the day and would be on the same report at the end of the day. This is simply not true. . . . Mr. Vinsant also claims that it took me a full day to get ready for the financial matters conference call. This is not true. It took less than two hours for me to prepare for the conference and I was prepared for the meeting. Mr. Vinsant claims that I made negative comments about having to work too hard. This is not true. . . .

> Glasscox said there were times when I was away from the office and was apparently attempting to work from home. He also said that regardless of what I was doing, he viewed it negatively. . . . In short, Vinsant didn't ask me what I was working on in Mobile, and all he cared about was that my working in Mobile fit his agenda to have me terminated.

Aff. of Larry Nobles [45-2], att. As Ex. "B" to Resp. to Mot. for Summ. J., p. 2-3.

This evidence is insufficient to create a factual dispute on the pretext issue. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext. . . . [Plaintiff] must do more than dispute the underlying facts and argue that [the employer] made the wrong decision in order to survive summary judgment." *Lemaire v. Louisiana Dept. of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). The discrimination laws are "not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers." *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988).

> In the court's opinion, while plaintiff's affidavit in this case may be sufficient to create an issue of fact as to whether her performance was deficient, it does not cast doubt on [the decision-maker's] assertion that she *perceived* plaintiff's performance was deficient. As defendant notes, 'the question is not whether an employer made an erroneous decision; it is whether the decision was made with a discriminatory motive.'

*Healy v. Tougaloo Coll.*, 2011 WL 915050, *4 (S.D. Miss. Mar. 15, 2011)(quoting *Mayberry v. Vaught Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir. 1995)).

The evidence of record demonstrates that both Mr. Lattz and Mr. Vinsant were concerned about Plaintiff's job performance. According to Mr. Lattz, "Mr. Vinsant expressed to me [both] his opinion Mr. Nobles was not working out as a manager. . . . and Mr. Nobles was already attempting to work away from the Biloxi office which was

inconsistent with instructions given to him by Mr. Vinsant." Declaration of Wendell Lattz [43-4] at ¶10, att. as Ex. "4" to Mot. for Summ. J.

> During Mr. Nobles' employment, I received reports from Mr. Creel and Ms. Glasscox that there were times when Mr. Nobles was not present in the office and was apparently attempting to work from home or in Mobile, Alabama. I do not know what Mr. Nobles was doing on the days he was not in the office. Regardless of what he was doing, I viewed this negatively because his actions were inconsistent with my initial directives to him to work in the Biloxi office every day until operations were stabilized.
>
> Ms. Glasscox and Mr. Graham both reported unfavorably to me about Mr. Nobles' actions and statements while they were working with him in Biloxi that week. In particular, Ms. Glasscox indicated it took Mr. Nobles almost an entire day to get ready for the financial conference when in my view and her view it should have taken him no more than an hour to do so. She told me Mr. Nobles did not seem to be getting a grasp on the financial information. These unfavorable reports from Ms. Glasscox and Mr. Graham were the "last straw" for me and in addition to the other previous unfavorable reports and observations caused me to change my opinion of Mr. Nobles and decide he should be discharged.

Declaration of Scott Vinsant [43-2] at ¶¶ 10, 12, att. as Ex. "2" to Mot. for Summ. J.

Plaintiff has submitted insufficient admissible evidence to show that Defendant's termination decision was a mere pretext for age discrimination, or that Defendant's reasoning–while true–was only one reason for its conduct, and another motivating factor was Plaintiff's age. Based upon a thorough review of the record, the Court concludes that Plaintiff has not produced "evidence from which the jury [could] reasonably reject the employer's explanation and from which the jury [could] find that the employer's reason was mere pretext for discrimination." *Ellison v. Darden Restaurants, Inc.*, 52 F. Supp. 2d 747, 752 (S.D. Miss. 1999). The Court concludes that summary judgment is appropriate.

III. CONCLUSION

Viewing the evidence in the light most favorable to Plaintiff, he has satisfied his burden of establishing a *prima facie* case of age discrimination. However, Plaintiff has not satisfied his burden of demonstrating that Defendant's proffered reasons for his termination, while perhaps unfair in his view, were a pretext for age discrimination. For the reasons stated more fully herein, there is insufficient evidence to establish genuine issues of material fact on Plaintiff's age discrimination claim, and Defendant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated herein, the Motion [43] of Cardno, Inc., for Summary Judgment filed pursuant to FED. R. CIV. P. 56, is **GRANTED.**

**SO ORDERED AND ADJUDGED**, this the 28th day of June, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE